IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

PHILIPPE HETRICK,
    Plaintiff,

v.                                              Civil No. 1:23cv961 (DJN)

IINK CORP.,
    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant IINK Corp.'s ("IINK") request for a stay pending resolution of related arbitration proceedings (ECF No. 21). Plaintiff Philippe Hetrick ("Hetrick") opposes the motion. For the reasons that follow, the Court declines to stay this action.

### I. BACKGROUND

This action arises from a breakdown in business relations between IINK and Hetrick Companies ("HetCo"), an LLC wholly owned by Hetrick. (ECF No. 1 ("Compl.") ¶¶ 1, 5). HetCo's business involves processing checks on behalf of insurance claimants who suffer property damage. (*Id.* ¶¶ 6–7). To allow for more rapid disbursement of funds, in August 2022 HetCo contracted to have IINK electronically process payments from insurance companies to HetCo's clients. (*Id.* ¶¶ 11–12). That contract contained an arbitration clause requiring disputes between the parties to be decided by an arbitrator in Tampa, Florida. (ECF No. 13-3 at § 12.10).

Nearly a year into the relationship, HetCo discovered an unknown bank account linked to its client dashboard and alerted IINK. (Compl. ¶¶ 14–15). The record is bereft of what IINK's internal investigation uncovered. But IINK evidently suspected that HetCo caused the suspicious account, and so IINK rummaged through HetCo's records for evidence of its

misdeeds.  (*Id.* ¶¶ 17–19, 22(d)).  In the process, IINK discovered that most of HetCo's transactions were with Shanco Companies, LLC ("Shanco").  (*Id.* ¶¶ 10, 18–19).  IINK then contacted Feazel, Inc. ("Feazel") — the parent company of Shanco — to alert it of IINK's suspicions.  (*Id.*).  These suspicions included that Hetrick and HetCo were involved hacking, sanctions violations, and identity theft, among other transgressions.  (*Id.* ¶ 22).  IINK also provided HetCo's business records to Feazel, which included confidential information belonging to HetCo and HetCo's clients.  (*Id.* ¶¶ 20–21, 25).  IINK's behavior caused Feazel to freeze all contracts between Shanco and HetCo.  (*Id.* ¶¶ 26, 29).

Three weeks later, on July 21, 2023, HetCo and Hetrick brought this action and raised six claims for (i) violation of the Stored Communications Act, 18 U.S.C. § 2702 *et seq.*, (ii) violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, (iii) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, (iv) common law defamation, (v) misappropriation of trade secrets in violation of the Virginia Uniform Trade Secrets Act, Va. Code § 59.1-336 *et seq.*, and (vi) common law intentional interference with business relations. Only the defamation claim was raised by both HetCo and Hetrick; the remaining five counts were alleged by HetCo only.  IINK then moved to compel arbitration pursuant to its contract with HetCo.  (ECF No. 13 at 1).  On January 3, 2024, Senior District Judge T.S. Ellis, III held that the arbitration agreement was valid, enforceable, and covered each of HetCo's claims against IINK.  *Hetrick Companies LLC v. IINK Corp.*, _F. Supp. 3d_, 2024 WL 47408, at *1 (E.D. Va. Jan. 3, 2024) (ECF No. 19).  Because Judge Ellis concluded that the Federal Arbitration Act only permits a district court to order arbitration in the district in which the court sits, *id.* at *12–13 (interpreting 9 U.S.C. § 4), Judge Ellis ordered that HetCo's claims be transferred to the Middle District of Florida ("MDFL"), Tampa Division, so that court could

compel arbitration. *Id.* at *14–15.  However, Judge Ellis also held that the arbitration clause did not bind Hetrick, who was not party to the contract. *Id.* at *1.  The case was therefore severed, with HetCo's claims transferred to the MDFL and Hetrick's defamation claim retained in this District. *Id.* at *18.  Judge Ellis requested supplemental briefing on whether to stay Hetrick's claim pending disposition of the arbitration. *Id.*  On January 15, 2024, Hetrick's case was transferred to the undersigned.  (ECF No. 22).

## II.    LEGAL STANDARD

At the outset, the parties dispute the applicable legal standard.  IINK argues that a decision to stay non-arbitrable claims is a matter left to the discretion of a district court.  Hetrick, in turn, asserts that a stay must satisfy the far more demanding doctrine of abstention, which he terms "an extraordinary remedy" only permitted on "specified bases" inapplicable here.  (ECF No. 28 (Plaintiff's Opposition to Stay Proceedings ("Pl.'s Br.")) at 6).

### A.    Abstention

Federal courts ordinarily cannot decline to adjudicate cases that fall within their jurisdiction.  *See Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 404 (1821) (courts "have no more right to decline the exercise of a jurisdiction which is given than to usurp that which is not given.")  But under the "doctrine of abstention . . . a District Court may decline to exercise or postpone the exercise of its jurisdiction" when doing so would "disrupt[] federal-state relations." *Allegheny Cnty. v. Frank Mashuda Co.*, 360 U.S. 185, 188, 190 (1959).  Abstention is meant to avoid "needless friction with state policies" or "unnecessary constitutional adjudication." *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 33 (1959) (quoting *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)); *Harrison v. NAACP*, 360 U.S. 167, 177 (1959).  From these principles, the Supreme Court had recognized that abstention is proper if, as relevant here,

3

there are parallel state proceedings and "exceptional circumstances" counsel abstention. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976).[1] The mere presence of related proceedings does not suffice to trigger abstention; federal courts possess a "virtually unflagging obligation" to exercise their jurisdiction, with abstention "an extraordinary and narrow exception." *Id.* And the *Colorado River* doctrine is "considerably more limited" than any other ground for abstention. *Id.* at 818.

Hetrick argues that the decision to stay proceedings is "seemingly" most analogous to *Colorado River* abstention because of the "concurrent Florida suit" created when HetCo's claims were transferred. (Pl.'s Br. at 6–7). And because IINK cannot point to any "exceptional circumstances," Hetrick avers that this Court has no basis to abstain. (*Id.*) That argument fails at the first step. Abstention doctrines are rooted in "our federalism." *Younger*, 401 U.S. at 43–44. Thus, there must be some state law, policy, or proceeding pending for abstention to be available. *See McLaughlin v. United Va. Bank*, 955 F.2d 930, 935 (4th Cir. 1992) ("before even considering the *Colorado River* factors, it is first necessary to determine whether there exist parallel duplicative state proceedings"); *Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984) (same). Judge Ellis bifurcated this matter, with one plaintiff, HetCo, transferred to a *federal* court in the MDFL and one plaintiff, Hetrick, retained here. HetCo was sent to Florida to permit arbitration pursuant to the parties' contract. And private arbitration cannot supply the necessary ingredient for abstention.

---

[1] Federal courts may also abstain if (i) unsettled questions of state law would be dispositive and allowing a state court to resolve that ambiguity would avoid resolving a federal constitutional issue, *Pullman Co.*, 312 U.S. at 500; (ii) the exercise of jurisdiction would interfere with an ongoing state administrative proceeding or action, *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 360–61 (1989) (describing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)); (iii) there exists unsettled questions of state law in an area of particular local concern, *Thibodaux*, 360 U.S. at 28–29; or (iv) a suit seeks equitable relief against pending state proceedings. *Younger v. Harris*, 401 U.S. 37, 42–43 (1971).

Judge Ellis ordered supplemental briefing on whether HetCo and Hetrick's defamation claims are so intertwined as to necessitate a stay pending resolution of arbitration. *Hetrick*, 2024 WL 47408, at *18. Plaintiff cites no authority for his claim that *Colorado River* — or any other abstention doctrine — constitutes the correct lens with which to resolve that question. *Cf. Munich Am. Reins. Co. v. Crawford*, 141 F.3d 585, 590 (5th Cir. 1998) (rejecting application of *Burford* abstention in the context of arbitration). Because abstention doctrine has no applicability to the question at hand, the Court declines to address further Hetrick's arguments as to application of the *Colorado River* factors.

    **B.**    **Discretionary Stay**

When a case raises a mix of arbitrable and non-arbitrable issues, the result may be "piecemeal litigation," with some issues going before an arbitrator and some issues left to the court. *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 97 (4th Cir. 1996). As to the arbitrable claims, the Federal Arbitration Act ("FAA") requires a district court to stay proceedings of "any issue referable to arbitration." 9 U.S.C. § 3. As to the non-arbitrable claims, district courts "may stay an action pursuant to their inherent power to control their own dockets." 21 Williston on Contracts § 57:63 (4th ed.); *see Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 865 (9th Cir. 1979) (collecting cases supporting the same). The arbitration need not involve the same parties or identical issues for a stay to be appropriate. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936).

The "decision to stay the litigation of non-arbitrable claims or issues is [left to] the district court's discretion." *Am. Recovery Corp.*, 96 F.3d at 97; *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) (same). In exercising this discretion, courts must "balance the various factors relevant to the expeditious and comprehensive

5

disposition of the causes of action on the court's docket." *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013) (quoting *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977)). In other words, a district court must make "an exercise of judgment." *Ga. Pac. Corp.*, 562 F.2d at 296. From this guidance, courts have distilled three factors relevant to the stay inquiry: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; [and] (3) potential prejudice to the non-moving party." *Sehler v. Prospect Mortg., LLC*, 2013 WL 5184216, at *2 (E.D. Va. Sept. 16, 2013); *see also Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518, 525 (E.D. Va. 2018) (applying the same factors); *Buzzell v. JP Morgan Chase Bank*, 2015 WL 5254768, at *2 (E.D. Va. Sept. 9, 2015), *aff'd*, 642 F. App'x 267 (4th Cir. 2016) (same). When entering a stay pending arbitration, courts also consider (4) the existence of common questions of fact and law between the two proceedings, (5) the risk of inconsistent or confusing results, (6) the predominance of arbitrable issues in the civil suit, and (7) the merit (or lack thereof) of the non-arbitrable claims. 21 Williston at § 57:63; *see Am. Home Assur. Co. v. Vecco Concrete Constr. Co. of Va.*, 629 F.2d 961, 964 (4th Cir. 1980) (applying similar factors). The burden rests on the party requesting a stay to "justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

### III. ANALYSIS

Hetrick's opposition discusses none of the relevant stay factors. Instead, he attempts to relitigate the merits of Judge Ellis' conclusion that HetCo's claim are subject to arbitration. In Hetrick's telling, "there is a strong chance that the [MDFL] will refuse to send [HetCo's claims] to arbitration" because the Eleventh Circuit takes a narrower view than the Fourth Circuit of the scope of arbitration clauses. (Pl.'s Br. at 3–6). But that misunderstands the governing

6

substantive law.  Whether an arbitration clause "applies to a particular type of controversy" is "a matter of contract interpretation."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001) (holding the same).  Thus, courts must apply "ordinary *state-law* principles that govern the formation of contracts" to conclude whether an issue is encompassed by an arbitration clause.  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (emphasis added); *see Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1320 (11th Cir. 2002) (determining the scope of an arbitration agreement based on "basic principles of contract interpretation").

Judge Ellis held that, under Florida law, HetCo's claims fell within the scope of the arbitration agreement.  *Hetrick*, 2024 WL 47408, at *9–10.  Florida law does not change between Circuits.  Moreover, Judge Ellis' decision now constitutes the law of the case, which the MDFL will be "loath to [revisit] in the absence of extraordinary circumstances."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988).  Hetrick advances no theory for why such circumstances would be present.  In short, this Court will not predicate its ruling on the assumption the MDFL will refuse to compel arbitration already ordered.

Nevertheless, the burden rests on IINK to justify a stay.  *Williford*, 715 F.2d at 127.  To do so, IINK asserts that Hetrick's defamation claim shares questions of fact and law with HetCo's defamation claim.  Therefore, proceeding with this action would, in IINK's view, be "inefficient, a waste of judicial resources, potentially confusing, and may result in inconsistent results."  (ECF No. 21 (Defendant's Supplemental Brief Requesting Stay ("Def's Br.")) at 3).

### A.      Commonality of Issues

IINK first argues that Hetrick and HetCo's defamation claims involve common questions of fact.  Specifically, IINK posits that this Court and an arbitrator will both have to resolve

"(i) whether the alleged statements were privileged; (ii) whether the alleged statements were false; (iii) whether the alleged statements were made negligently and/or with malice; (iv) whether the alleged statements were defamatory; and (v) what damages HetCo and Hetrick each incurred." (Def's Br. at 4). The Court remains unconvinced. True, Hetrick and HetCo's defamation claims arise from a common precipitating event: IINK's investigation of HetCo after seeming misuse of IINK's services. But IINK then had multiple "communications, meetings, and conferences" with Shanco and Feazel during which IINK made an assortment of allegedly defamatory statements. (Compl. ¶ 22). Resolution of Hetrick's and HetCo's defamation claims must be done on a statement-by-statement basis. *Cf. Ee v. Wash. Cnty.*, 2010 WL 680924, at *7 (D. Or. Feb. 25, 2010), *aff'd*, 423 F. App'x 757 (9th Cir. 2011) (noting that "assessment of a defamation claim is a statement-specific inquiry"). Thus, even if an arbitrator determines that some of IINK's statements about HetCo were not defamatory, that conclusion would have little bearing as to IINK's statements about Hetrick.

  **B.**  **Judicial Economy and the Risk of Inconsistent Results**

Judicial economy would not be promoted by staying this action until resolution of the arbitration. Nearly all of the defamatory statements alleged in the Complaint pertain to Hetrick, not HetCo. The Complaint alleges that IINK told Feazel and/or Shanco that:

 (a) Hetrick lied about his age;

 (b) Hetrick was born in Russia;

 (c) Hetrick's public adjuster license had expired;

 (d) Hetrick was involved in hacking IINK because someone from HetCo was logged in at the time of the hacking and Hetrick was known to use Russian IP addresses;

 (e) Hetrick had friends in Africa who assisted in the hack;

8

(f) Hetrick's father had a criminal background;

(g) Hetrick was in violation of sanctions placed on Russia;

(h) Multiple HetCo transactions were suspicious, because they involved deceased individuals and Hetrick had a history of identity theft involving deceased homeowners;

(i) IINK was working with federal officials to investigate Hetrick and HetCo's transfer of money to Russia; and

(j) HetCo and SureClaims (another business of Hetrick's) are committing fraud.

(Compl. ¶ 22). IINK notes that "some of the alleged defamatory statements involve both [Hetrick and HetCo]" or are unclear "as to whether they implicate Hetrick, HetCo, or both." (ECF No. 29 ("Def's Reply Br.") at 5). Some of these claims are concededly murky. But even at their broadest, only three of the ten pled statements can be read to encompass HetCo in any form.[2] There is no reason to believe that, after discovery, it will prove difficult to divorce IINK's remarks about HetCo from those pertaining to Hetrick. And once IINK's comments about HetCo are properly walled off, there will be minimal risk of inconsistent judgments.

### C. The Balance of Hardships

Equity also weighs against a stay. Hetrick reports that his prior business crumbled from IINK's conduct, and that IINK's defamatory statements are hindering Hetrick's future business endeavors. (ECF No. 15 (Plaintiff's Opposition to Motion to Dismiss) at 5, 11); (Pl.'s Br. at 10–11). The only hardship that IINK faces amounts to, at most, some duplicative efforts between the two proceedings. That harm can easily be remedied through prompt Rule 26(a)(1)(A) disclosures and cabined discovery tailored to Hetrick's injuries.

---

[2] As IINK correctly highlights, Hetrick further muddies the water by seesawing in his brief as to which claims pertain to Hetrick and which pertain to HetCo. (Def's Reply Br. at 6–8 (citing Pl.'s Br. at 12–13)). Nevertheless, the Court's analysis does not hinge on any of the vagaries indulged in Hetrick's brief.

IINK's cries of inefficiency also ring hollow. HetCo's claims were transferred to the MDFL on January 5, 2024. In the intervening months, IINK never moved for an order compelling arbitration. Indeed, IINK has failed to initiate *any* action in that matter. *See generally Hetrick Cos. LLC v. IINK, Corp.*, No. 8:24-cv-63 (M.D. Fla.). Courts have deferred to arbitration proceedings that will conclude within a few months, in recognition of the reality that arbitration can be "a more efficient dispute resolution process than litigation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002); *see Singh v. Interactive Brokers LLC* (*Singh I*), 219 F. Supp. 3d 549, 552 (E.D. Va. 2016) (granting a stay for "the shorter of five (5) months or when arbitration is completed"); *Synopsys, Inc. v. Siemens Indus. Software Inc.*, 2021 WL 11679003, at *6 (N.D. Cal. Sept. 9, 2021) (supporting a stay because "the potential harm, if any, from staying the case for five months does not outweigh the judicial efficiencies from staying the entire case.") But no theory of judicial economy comports with staying this action in light of IINK's passive litigating posture. Further delay will only cause memories to fade, evidence to sour, and the wheels of justice to needlessly sit idle. Insofar as IINK believes that there is a risk of inconsistent judgments, this case will likely resolve before the arbitration. The arbitrator has no more claim to deference than a judgment from this Court.[3]

---

[3] The Court need not discuss the sixth or seventh stay factors— the predominance of arbitrable issues in the civil suit and the merit of the non-arbitration claims — in great length. Because HetCo's claims were severed and transferred, only non-arbitrable issues remain before the Court. And it would be premature to weigh the merits of Hetrick's defamation claim at this preliminary stage.

**D.     The Caselaw**

Notwithstanding the foregoing, IINK claims that courts consistently stay judicial proceedings on analogous facts.  Its cases fail to persuade.

IINK relies on four cases from this Circuit.  The first three present variations of the same pattern:  a plaintiff brought claims against multiple defendants.  Some of those defendants were party to an arbitration agreement covering the claims, but some were not.  The courts compelled arbitration of the arbitrable claims but were left with an identical set of allegations against the remaining nonparty defendants.  And in an exercise of sound prudence, each court stayed judicial proceedings.  *See Koridze v. Fannie Mae Corp.,* 593 F. Supp. 2d 863, 872–73 (E.D. Va. 2009); *Singh I*, 219 F. Supp. 3d at 562–63; *C.B. Fleet Co. Inc. v. Aspen Ins. UK Ltd.*, 743 F. Supp. 2d 575, 589–90 (W.D. Va. 2020).  IINK's fourth case, though procedurally more complex, involved plaintiffs bringing civil claims when those precise issues were already being arbitrated.  *See Meridian Imaging Sols., Inc. v. OMNI Business Sols. LLC*, 250 F. Supp. 3d 13, 26–27 (E.D. Va. 2017).  Unsurprisingly, that court also granted a stay.  From these cases, IINK mistakenly derives the proposition that "[t]his Court has consistently stayed proceedings of non-arbitrable claims pending the resolution of related arbitration proceedings."  (Def's Br. at 3).

The Court analyzes each of IINK's cases below.  In short, the caselaw teaches that if non-arbitrable issues depend on arbitrable ones, or if resolution of arbitrable issues would render the district court's ruling on the non-arbitrable issues unnecessary, "litigation on the non-arbitrable issues should be stayed pending arbitration."  *Summer Rain v. The Donning Company/Publishers, Inc.*, 964 F.2d 1455, 1461 (4th Cir. 1992).  But where "[t]he legal sufficiency of [the non-arbitrable] claims do[es] not depend on the resolution of an arbitrable issue," no basis exists to stay proceedings.  *Glenn v. Wells Fargo Bank, N.A.*, 2017 WL 371956,

at *11 (D. Md. Jan. 26, 2017), *aff'd*, 710 F. App'x 574 (4th Cir. 2017); *see also New NGC, Inc. v. Ace Am. Ins. Co.*, 105 F. Supp. 3d 552, 559 (W.D.N.C. 2015) (denying a stay where the issues in civil litigation were "not necessarily determinative of arbitrable issues").

### 1. *Kordize*, *Singh*, and *C.B. Fleet*

For example, in *Koridze*, a plaintiff brought Title VII claims against three defendants arising from the same allegedly unlawful acts. 593 F. Supp. 2d at 865–66. The plaintiff was hired by the first defendant who was tasked by the second defendant to recruit employees for the third defendant. *Id.* Within this employment arrangement lay a consulting agreement that the plaintiff signed with one of the defendants at the time of her hiring. *Id.* at 865, 867. That agreement in turn housed an arbitration clause covering the plaintiff's Title VII claims. *Id.* Pursuant to Section 3 of the FAA, the Court was required to stay judicial proceedings as to that defendant. *Id.* at 867, 872. Though the other two defendants were not privy to the arbitration, the court concluded that the plaintiff's claims against those defendants "should also be stayed" because arbitration was "likely to resolve factual questions coextensive with claims against [the] nonparties." *Id.* at 872. This was so because the plaintiff pled the same factual allegations and legal claims against the three defendants. Indeed, plaintiff's theory of the case was that the three were "acting as her 'joint employers.'" *Id.* at 865. The merits of her claim against the defendants thus necessarily rose and fell together. It would have been incongruous under such circumstances to separately litigate the same issue in two independent forums.

Similarly, in *Singh I*, the plaintiffs opened investment accounts with one defendant, with whom they entered an arbitration agreement, and designated two other defendants, with whom they had no arbitration agreement, as their financial advisors. 219 F. Supp. at 553, 555–56; *Singh v. Interactive Brokers LLC* (*Singh II*), 2019 WL 6883794, at *1 (E.D. Va. Dec. 17, 2019).

The account manager successfully moved to compel arbitration with the plaintiffs.  *Singh I*, 219 F. Supp. at 561.  And because the plaintiffs alleged interrelated misconduct by the three defendants, the Court concluded that a stay of the claims against the nonparty defendants was appropriate.  *Id.*  The same principle held true in *C.B. Fleet*, where a plaintiff sought a declaratory judgment of policy coverage against two insurers, both of whom alleged invalidity of the contract based on the same alleged material misrepresentation, but only one of whom had an arbitration agreement with the plaintiff.  743 F. Supp. 2d at 577–78, 581, 589–90.

      Two throughlines connect *Koridze*, *Singh*, and *C.B. Fleet*.  First, each plaintiff was, in effect, trying to circumvent its contractual obligations.  Each plaintiff signed an arbitration agreement, brought claims subject to that agreement, and sued defendants not party to the contract to keep the claims in court.  But the plaintiffs' claims "presume[d] the existence of a written agreement" or alleged "substantially interdependent and concerted misconduct" by the defendants.  *Hetrick*, 2024 WL 47408, at *7.  Courts have regularly used various tools — such as stays and equitable estoppel — to prevent plaintiffs from thwarting arbitration through clever joinder.  *Id.* (collecting cases).  Second, and critically, judicial proceedings would be entirely duplicative of the arbitration ordered by those courts.  The plaintiffs, the operative facts, and the legal theories of recovery were identical between the defendants.  The only consequential difference was that the plaintiffs agreed to arbitrate their claims as to some of the defendants but not others.  Under such circumstances, it is no surprise that the *Koridze*, *Singh*, and *C.B. Fleet* courts stayed judicial proceedings.  To do otherwise would invite needless redundancy from parallel litigation of the same underlying dispute.

13

2.  *Meridian Imaging Sols.* and *Metzler*

IINK's final case reaffirms these principles.  In *Meridian Imaging Sols., Inc. v. OMNI Business Sols. LLC*, a plaintiff corporation arbitrated claims against a competitor pertaining to the alleged theft of the plaintiff's propriety information.  250 F. Supp. 3d 13, 17–18 (E.D. Va. 2017).  While the arbitration was underway, the plaintiff brought a separate civil action against, *inter alia*, an employee of the competitor "arising out of the same nucleus of operative facts."  *Id.*  The court not only stayed proceedings against the defendant employee; it held that the employee, a nonsignatory to the arbitration agreement, could nevertheless compel arbitration against the plaintiff to avoid an end-run around the contract.  *Id.* at 23.  In a further attempt to evade the arbitrator, the parent company of the plaintiff joined the civil proceeding.  The court concluded that it would be a bridge too far to allow one nonparty to the arbitration agreement to enforce its terms against another nonparty.  *Id.* at 25–26.  But because the issues before the court and the arbitrator were inextricably intertwined, the court granted a stay of the remaining claims.  *Id.* at 26–27.  As in IINK's other cases, the *Meridian* court was presented with two choices but a conspicuous answer:  it could order arbitration and stay the remaining claims or order arbitration and then proceed on a carbon copy of the proceedings just ordered.  Common questions of fact and law, judicial economy, and the risk of inconsistent judgments all counseled in favor of a stay.

That is not the case here.  The Complaint alleges that IINK made multiple statements, some of which pertain to HetCo and some of which pertain to Hetrick.  (Compl. ¶ 22).  Even if IINK's statements about HetCo are determined to be nondefamatory, that holding would not necessarily resolve whether IINK's separate statements about Hetrick were.  A stay would therefore only serve to delay — not resolve — this proceeding.

14

An analogous case shows the folly of granting a stay on these facts.  In *Metzler Contracting Co. LLC v. Stephens* (*Metzler I*), two plaintiffs, an LLC and its sole member, brought a pair of defamation claims arising from a breach of contract dispute.  2007 WL 1977732, at *1–2 (D. Haw. July 3, 2007).  That contract contained an arbitration clause, which covered the defamation claims alleged.  *Id.* at *5.  But the court held that the member did not become party to the contract merely by signing as a representative of the LLC.  *Id.* at *5–6.  The member therefore could not be compelled to submit to the arbitrator.  *Id.*  That describes this case to a tee.

The *Metzler* court, like this one, then considered whether to stay the non-arbitrable defamation claim.  It chose to grant a stay based on a passing reference to the interests of judicial economy.  *Id.*  No other analysis was provided.  The court "intended for the stay to remain in effect until the conclusion of the arbitration."  *Metzler Contracting Co. LLC v. Stephens* (*Metzler II*), 2009 WL 10702734, at *4 (D. Haw. Feb. 3, 2009).  But the issues involved in the arbitration were "complex," resulting in prolonged delay.  *Id.*  That delay prompted the court to revisit its decision and lift the stay.  *Id.*  The court noted that the non-arbitrable "defamation claims [were] neither novel nor extraordinarily complex" and that a stay would therefore "not be in the interests of judicial economy."  *Id.*  So too here.  Hetrick brings a garden-variety defamation claim that can promptly be resolved by this Court.  IINK has yet to even initiate arbitration, and the arbitrator will have to resolve a multitude of federal and state law claims when those proceedings eventually commence.  Judicial economy counsels in favor of promptly resolving this case, not deferring until some amorphous time when arbitration will not only begin, but conclusively resolve.

## IV. CONCLUSION

This action and the contemplated arbitration do not raise common issues such that a decision in one forum will necessarily resolve proceedings in the other. Thus, there is minimal risk of inconsistent or confusing judgments, and few efficiencies to be gained by waiting for the arbitrator to proceed first. Hetrick deserves to have his own day in court to litigate the merits of his claim. That day should not be conditioned on when IINK chooses to initiate proceedings based on a contract to which Hetrick was not a party. Eight months have already passed since the filing of the Complaint. IINK has failed to show that this Court should countenance further delay. Accordingly, the Court declines to stay these proceedings and will DENY IINK's requested relief (ECF No. 21).

An appropriate order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

                                                                 /s/
                                                  David J. Novak
                                                  United States District Judge

Alexandria, Virginia
Date: April 2, 2024