IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

PHILIPPE HETRICK,
    Plaintiff,

v.                                           Civil No. 1:23cv961 (DJN)

IINK, CORP.,
    Defendant.

## MEMORANDUM ORDER
### (Denying *Daubert* Motion)

This matter comes before the Court on Defendant IINK, Corp.'s ("Defendant" or "IINK") Motion to Exclude Plaintiff's Expert, which seeks to exclude the testimony of Brian Buss ("Mr. Buss"). (ECF No. 44 ("*Daubert* Motion").) The Motion has been fully briefed, (ECF Nos. 45, 58, 59), rendering it ripe for resolution. For the reasons set forth below, the Court hereby DENIES Defendant's *Daubert* Motion (ECF No. 44). Consequently, Mr. Buss will be permitted to provide his expert opinions.

### I.    BACKGROUND

Philippe Hetrick ("Plaintiff" or "Hetrick") started Hetrick Companies, LLC ("HetCo") in 2019. HetCo, a public insurance claims adjuster, offers its services to homeowners and contractors in the District of Columbia metropolitan area. (ECF No. 65 ("Am. Compl.") ¶¶ 5–10.) Hetrick constitutes the sole owner of HetCo. (*Id.* ¶ 5.) IINK, an online payment company, contracted with Hetrick for use of its payment services. (*Id.* ¶ 11.) In June 2023, Hetrick noticed an unfamiliar bank account linked to HetCo's client list on the IINK platform. (*Id.* ¶ 14.) Hetrick reported the unusual activity to IINK, who investigated the matter and determined that its system was hacked. (*Id.* ¶¶ 15–29.)

While investigating, IINK suspected Hetrick of improperly using IINK's services. In response, IINK allegedly contacted Hetrick's largest client, Shanco, and made numerous accusations about Hetrick's character and conduct. (ECF No. 58 ("Pl.'s Opp.") at 2.) Hetrick alleges that because of these conversations, HetCo lost the lion's share of its work, shuttering the business and therefore its profits. (*Id.* at 8.) Hetrick retained Mr. Buss as an expert to determine the extent of Hetrick's loss from the destruction of HetCo. (*Id.* at 3.)

Defendant now seeks to exclude Mr. Buss's expert testimony and offers two arguments in support of its *Daubert* Motion: First, that Mr. Buss' opinions prove unreliable and irrelevant, because they do not comport with the facts of the case; and second, that Mr. Buss' testimony would be more prejudicial than probative if admitted into evidence.

## II.     LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if" all of the following conditions are satisfied:

> (a) the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 thus establishes "a district court's gatekeeping responsibility to 'ensure that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert v. Merrell Dow Pharms.*,

*Inc.*, 509 U.S. 579, 597 (1993)). In undertaking this gatekeeping function, district courts enjoy "broad latitude" to consider "the unique circumstances of the expert testimony involved." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). The Rule 702 inquiry thus necessarily proves "flexible," focusing on the expert's "principles and methodology" rather than the conclusions that the expert draws. *Id.*

"A reliable expert opinion must be based on scientific, technical, or other specialized *knowledge* and not on belief or speculation." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). And to the extent that "an expert makes inferences based on the facts presented to him, the court must ensure that those inferences were "derived using scientific or other valid methods." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021). Courts look to several factors as indicia of reliability, including "testing, peer review, evaluation of rates of error, and general acceptability" in the expert's field. *Id.*

Regarding relevance, the Court must ask "whether [the] expert testimony proffered . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. The relevance inquiry is one of "fit" — expert testimony must demonstrate "a valid . . . connection to the pertinent inquiry as a precondition" of admissibility. *Id.* at 592.

Throughout its Rule 702 analysis, a district court must remain cognizant of two bedrock, yet competing, principles. On the one hand, Rule 702 "was intended to liberalize the introduction of relevant expert evidence." *Westberry*, 178 F.3d at 261. District courts therefore "need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct." *Id.* On the other hand, expert testimony often proves uniquely capable of confusing or misleading the jury. *Id.* "Proffered evidence that has a greater potential to mislead

3

than to enlighten" should therefore be excluded. *Id.* Critically, the proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. Fed. R. Evid. 702; *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).

Additionally, while Rule 702 governs the admissibility of expert testimony generally, Federal Rule of Evidence 703 prescribes the court's "relatively narrow inquiry" into an expert's reliance on otherwise inadmissible information. Fed. R. Evid. 703. Rule 703 provides that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

*Id.* Rule 703 thus controls only "whether an expert reasonably relied upon inadmissible information in forming [his] opinions." *Goodrich v. John Crane, Inc.*, 2018 WL 4677773, at *19 (E.D. Va. Sept. 28, 2018).

### III. DISCUSSION

#### A. *Daubert* Standard

The Court begins by addressing whether Mr. Buss' opinions on economic loss prove reliable. Next, the Court addresses whether Mr. Buss' opinions qualify as relevant to the facts of this case. And finally, the Court addresses whether Mr. Buss' testimony proves more prejudicial than probative.[1]

---

[1] In its Reply (ECF No. 59), Defendant asserts that Plaintiff's Motion qualifies as untimely and should be struck from the record. But this is incorrect. Defendant filed its *Daubert* Motion on August 5, 2024, thereby triggering a deadline of August 19, 2024 to file a response. Because Plaintiff timely filed his response on August 19, 2024, the Court denies Defendant's request to strike Plaintiff's response.

4

1. **Reliability**

    *a.   Reliability of Methodology*

Defendant does not directly attack the reliability of the economic methodology employed by Mr. Buss to calculate the value of Plaintiff's business during the damages period. Instead, Defendant challenges the reliability of the facts and data used as inputs to determine Plaintiff's alleged damages. But analyzing the reliability of Mr. Buss' methodology and data proves inextricably intertwined. As a result, the Court will briefly address the reliability of Mr. Buss' chosen methodology before analyzing the reliability of the data used as inputs in that methodology.

Mr. Buss' expert report (ECF No. 48) notes that economists utilize three generally accepted methodologies to determine a company's loss of value: (1) the income approach; (2) the market approach; and (3) the cost approach. First, the income approach measures the present worth of anticipated future net cash flows generated by a business. (*Id.* at 4.) In a single-period version of this approach, net cash flow during a normalized period is capitalized to determine a present value. In other words, this model forecasts future earnings based on a sample size of earnings. This process is called "capitalization of earnings." (*Id.*) Second, the market approach estimates a company's value by comparing economically comparable assets. (*Id.*) And third, the cost approach determines value by subtracting a company's liabilities from their total assets. (*Id.*) After considering each approach, Mr. Buss chose the capitalization-of-earnings methodology as the most appropriate to calculate the present value of Plaintiff's lost business.

The Court must evaluate whether an expert applies a reliable methodology. "General acceptability" in the expert's field constitutes one indicator of reliability. *Sardis*, 10 F.4th at 281. The Fourth Circuit has affirmed the capitalization-of-earnings methodology as an accepted and

reliable method for numerous economic valuations. *See Sharma v. USA Int'l, LLC*, 851 F.3d 308, 314 (4th Cir. 2017) (finding "the use of a capitalization rate method . . . wholly appropriate" to determine the value of the businesses at issue); *see also Pizzella v. Vinoskey*, 409 F. Supp. 3d 473, 493 (W.D. Va. 2019), *aff'd in relevant part sub nom. Walsh v. Vinoskey*, 19 F.4th 672 (4th Cir. 2021) (recognizing that the capitalization-of-earnings methodology constitutes a reliable methodology if applied correctly). As such, the Court finds that Mr. Buss' use of the capitalization-of-earnings methodology qualifies as generally accepted in the economics field and therefore constitutes a reliable method under the *Daubert* standard to calculate Plaintiff's losses.

### b. *Reliability of Data*

Defendant directs most of its argument at the data used in Mr. Buss' capitalization-of-earnings model. Defendant claims that Mr. Buss' opinions prove unreliable, because they constitute speculation and disregard the evidence. (ECF No. 45 at 1.) The Court rejects this argument and finds that Mr. Buss' report — and the data therein — is sufficiently reliable under the *Daubert* standard.

Mr. Buss' expert report estimates Plaintiff's lost profits during the damages period, which runs from the time of the alleged defamation (July 2023) to the report date (July 2024).[2] (ECF No. 48 at 6.) Lost profits are calculated by projecting what HetCo should have earned and subtracting what they in fact earned. (*Id.*) To determine what HetCo should have earned, Mr. Buss developed a "but-for projection" ("But-For Profit") that estimated the number of cases

---

[2] As an initial matter, HetCo expected to receive revenue from a new claim project up to 12 months after starting a claim. (ECF No. 48 at 8.) As a result, Mr. Buss' projections go further past the alleged defamation than Defendant would like. But this is a factual issue to put to the jury. There is data that supports the 12-month estimation, and as a result it is a reliable input under *Daubert*. Defendant may reach a different conclusion and present that at trial.

Plaintiff would have worked on and the revenue that they would have garnered from that work had Defendant's actions not occurred. (*Id.*) To determine these estimations, Mr. Buss utilized data from HetCo's 2020, 2021 and 2022 tax returns and HetCo's January to August 2023 new-claims data (ECF No. 48 at 7).[3] HetCo's tax returns report the full profits HetCo earned. And using these figures, Mr. Buss determined HetCo's revenue per individual claim that it managed. Mr. Buss then multiplied the average revenue per claim by the new claims information to estimate HetCo's But-For Profit from January 2023 to August 2023. These estimations constitute the heart of Defendant's disagreements with Mr. Buss' report.

The uncontested record demonstrates that Plaintiff provided Mr. Buss with the January to August 2023 new-claims data. (ECF No. 48 at 5.) Although Defendant challenges Plaintiff as an unreliable source, the Court does not agree. Federal Rule of Evidence 703 allows an expert to base their opinion "on facts or data in the case that the expert has been made aware of." *Goodrich v. John Crane, Inc.*, 2018 WL 4677773, at *19 (E.D. Va. Sept. 28, 2018). Further, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id.* Plaintiff solely owns HetCo, and HetCo qualifies as small enough such that it does not have a finance department. (Pl.'s Opp. at 6.) As a result, it remains entirely reasonable that the new-claims data

---

[3] Plaintiff's 2023 tax returns are not yet available (Pl.'s Opp. at 5.) But Mr. Buss utilized data from Plaintiff's Public Mediation Brief, a document that includes monthly business revenues from January 2023 to August 2024. *Id.* Plaintiff also disclosed bank statements and copies of every check in 2023. *Id.* The Court agrees with Plaintiff that this data qualifies as sufficiently reliable under the *Daubert* standard. Mr. Buss' calculations were focused on estimating the difference between actual income and expected income for 2023. The essential number in this inquiry is the money coming in and going out of Plaintiff's bank account. Because the Public Mediation Brief provides this information, the Court finds no reliability issue. Defendant may challenge Mr. Buss about figures in the Public Mediation Brief and the lack of 2023 tax returns at trial.

came from Plaintiff. Employees also constitute a reasonable source of financial data. *See Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.*, 851 F.2d 540, 545 (1st Cir. 1988) (concluding that an expert's testimony was properly admitted under Rule 703 where the expert derived his damages estimates from the party's business and financial records and through interviews with company personnel). If Defendant wishes to question the veracity of the new-claims data provided by Plaintiff, it may do so on cross-examination. But as for this inquiry, the new-claims data is sufficiently reliable under *Daubert* to be admitted.

To calculate HetCo's But-For Profit after August 2023, Mr. Buss again utilized his estimation of HetCo's average revenue per claim. Except here, Mr. Buss multiplied this figure by the average number of claims that HetCo expected to work on in a given month. Mr. Buss calculated the future estimation of work by averaging the historical data of new claim referrals per month from Shanco, Plaintiff's largest client and referral source. (ECF No. 48 at 8.) But Defendant argues that this constitutes an unreliable figure, because there exists no agreement between Shanco and HetCo guaranteeing these referrals. (ECF No. 45 at 3.) Plaintiff acknowledges the lack of an official agreement, (Pl.'s Opp. at 9), but argues that Shanco and HetCo had a "general understanding" that business would continue based on good-will and positive results. (*Id.* at 9-10.) Although Defendant may question the assumption that business would continue at the same rate of its historic dealings, the Court's purpose here is not to decide the right calculation, but rather to determine whether the expert uses sufficient facts and data. Whether Plaintiff and Shanco would have continued their business dealings at the same, higher or lower rate — or not at all — constitutes a question of fact for the jury. In the meantime, Mr. Buss reasonably relied on HetCo's track record with Shanco to conclude that, but-for Defendant's alleged actions, business would have continued as usual.

In conclusion, the Court finds that Mr. Buss' report satisfies the *Daubert* reliability standard. The expert report relied on sufficient facts and data and utilized a method that the Fourth Circuit has affirmed as generally accepted. Should Defendant wish to further question Mr. Buss' report and its conclusions, it may do so on cross-examination.

### 2. Relevance

Defendant argues that Mr. Buss opinions prove irrelevant, because they contravene the facts of this case. (ECF No. 45 at 1.) For relevance, the Court must ask "whether [the] expert testimony proffered . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. The relevance inquiry proves one of "fit" — expert testimony must demonstrate "a valid . . . connection to the pertinent inquiry as a precondition" of admissibility. (ECF No. 45. at 592.) Mr. Buss' testimony satisfies this standard.

Overall, Defendant simply repackages their reliability arguments under the heading of relevance. (*Id.* at 15–16.) The Court will not rehash why Mr. Buss' data is reliable under the *Daubert* standard. But, in one instance, Defendant raises a unique claim. Defendant argues that Mr. Buss' lost profits analysis is "not tied in any way to any particular wrongful act by IINK" and therefore is irrelevant (*Id.* at 15.) But this assertion is false. Mr. Buss calculated damages resulting from Defendant's alleged defamation to Plaintiff's largest client. (*Id.* at 7.) While Defendant hotly contests what caused Shanco to cease business with HetCo, that is a factual issue unrelated to reliability or relevance. So long as Mr. Buss employed reliable methods and data – and we have established that he did – the Court will not exclude an expert based on a factual disagreement between the parties. As a result, this argument fails.

This case is about whether Defendant defamed Plaintiff and caused the loss of his business. An expert who testifies as to the extent of that financial loss gets to this essential

inquiry. As a result, Mr. Buss testimony proves relevant under the *Daubert* standard. Defendant clearly takes issue with Mr. Buss' calculations, and they are free to raise those questions at trial.

### B. Rule 403

Finally, Defendant argues that Mr. Buss' opinions must be excluded pursuant to Federal Rule of Evidence 403, because their probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. In *Daubert*, the Supreme Court cautioned that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." 509 U.S. at 592–93. "Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Id.* In the Fourth Circuit, prohibition is required "only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *United States v. Katsipis*, 598 F. App'x 162, 164 (4th Cir. 2015) (quoting *United States v. Mohr*, 318 F.3d 613, 618 (4th Cir. 2003)). This does not qualify as one of those instances. As Plaintiff notes, (Pl.'s Opp. at 18), and the Court experienced while analyzing this issue, HetCo's revenue structure proves difficult to discern from the raw data. An expert is therefore highly probative to assist the jury in understanding whether and to what extent financial loss occurred. As a result, Mr. Buss' testimony qualifies as more probative than prejudicial and presents no danger of confusing the issues or misleading the jury under Rule 403.

### IV. CONCLUSION

At its core, Defendant does not challenge the methodologies employed by Mr. Buss. Rather, it contests Mr. Buss' determinations based on competing versions of the facts. "Where the methodology is sound and the evidence relied upon is sufficiently related to the case, disputes

over the expert's credibility or over the accuracy of the underlying facts are for the jury." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015). Accordingly, the Court hereby DENIES Defendant's *Daubert* Motion (ECF No. 44).

Let the Clerk file a copy of this Order electronically and notify all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: September 11, 2024