IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

PHILIPPE HETRICK,
    Plaintiff,

v.                                                           Civil No. 1:23cv961 (DJN)

IINK CORP.,
    Defendant.

## MEMORANDUM ORDER
**(Denying Motion for New Trial, Entry of Judgment and Recission of Trial Verdicts)**

This matter comes before the Court on Plaintiff's Motion for New Trial under Fed. R. Civ. P. 59(a)(1), Entry of Judgement under Fed. R. Civ. P. 59(a)(2) and Recission of Certain Trial Verdicts under Fed. R. Civ. P. 50, (ECF No. 155 ("Motion")), following a jury trial for this defamation case. The Motion has been fully briefed, (ECF Nos. 156–158), rendering it ripe for resolution. For the reasons set forth below, the Court DENIES Plaintiff's Motion (ECF No. 155).

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a business relationship between Plaintiff and Defendant. Plaintiff operates Hetrick Companies, LLC ("HetCo"), which performs public adjusting services. (ECF No. 156 ("Mot.") at 1.) HetCo, a public insurance claims adjuster, offers its services to homeowners and contractors in the District of Columbia metropolitan area. (ECF No. 65 ¶¶ 5– 10.) Plaintiff constitutes the sole owner of HetCo. (*Id.* ¶ 5.) Defendant, an online payment company, contracted with Hetrick for use of its payment services. (*Id.* ¶ 11.) In June 2023, Plaintiff noticed an unfamiliar bank account linked to HetCo's client list on Defendant's platform. (*Id.* ¶ 14.) Plaintiff reported the unusual activity to Defendant, who investigated the

matter and determined that its system had been hacked. (*Id.* ¶¶ 15–29.) Defendant contacted Plaintiff's largest client regarding the hack. (Mot. at 1.) Plaintiff now claims Defendant defamed him in statements made during its communications with that client, prompting him to initiate this action. (ECF No. 1.)

The Court held a two-day jury trial in this matter. (ECF Nos. 151, 152.) At the conclusion of evidence, the Court granted Defendant's oral motion pursuant to Fed. R. Civ. P. 50(a) to strike three of Plaintiff's alleged defamatory statements after Plaintiff failed to proffer sufficient evidence that Defendant made the statements or that they concerned Plaintiff.[1] The jury then found Defendant not liable for defamation on the remaining statements. (ECF No. 153.)

## STANDARDS OF REVIEW

A.  **Rule 59(a)(1)**

Federal Rule of Civil Procedure 59(a)(1) provides that "[t]he court may, on a motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1). Rule 59(a)(1) demands a high burden, however. "The court should grant a new trial only if (1) the verdict is against the clear weight of the evidence, (2) is based on evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 650 (4th Cir. 2002) (citations omitted). In considering a motion for a new trial, "'a trial judge may weigh the evidence and consider the credibility of the witnesses[.]'" *Chesapeake*

---

[1] At trial, Plaintiff alleged seven defamatory statements. (ECF No. 146-2 at 27.) The jury ultimately deliberated on four alleged defamatory statements. (ECF No. 153.)

2

*Paper Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1237 (4th Cir. 1995) (citation omitted). "The decision to grant or deny a motion for a new trial is 'within the sound discretion of the district court[.]'" *Id.* (citation omitted). The "crucial inquiry is 'whether an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair.'" *Bristol Steel & Iron Works Inc. v. Bethlehem Steel Corp.*, 41 F.3d 182, 186 (4th Cir. 1994) (citation omitted).

## ANALYSIS

### A.   Motion for New Trial pursuant to Rule 59(a)(1)

Plaintiff asserts that the Court should grant him a new trial under Rule 59(a)(1) for three reasons: first, there exists incontrovertible evidence that at least three of the alleged defamatory statements proved defamatory at trial; second, that the jury may have been biased by an alleged national prejudice against Russia; and third, Justin Hook constituted a non-credible witness. The Court will address each contention in turn.

#### 1.   Incontrovertible Evidence that Statements Proved Defamatory

Plaintiff first alleges that the Court should grant him a new trial, because the evidence at trial established the defamatory nature of at least three of the statements at issue. (Mot. at 4–5.) "Those statements are: (1) that Plaintiff was operating with an expired license, (2) that Plaintiff committed fraud, and (3) that Plaintiff committed fraud in a manner calculated to scam widows via identity theft of dead persons." (*Id.* at 6.) Defendant disagrees, arguing that "the record is replete with evidence that supports the jury's finding for IINK" on the three statements. (ECF No. 157 ("Resp.") at 7–8.)

Because Plaintiff challenges the jury's verdict on defamation, it proves relevant to recite the elements of defamation. Per the Court's instructions to the jury, the elements of defamation are: (1) Defendant made a statement; (2) that was published, that is heard or seen by someone

3

other than the Plaintiff; (3) was "of and concerning" the Plaintiff; (4) had a defamatory meaning about the Plaintiff; (5) was a materially false statement of fact; and (6) that the Defendant made the statement either knowing it to be false or, believing it to be true, the Defendant lacked reasonable grounds for such belief or acted negligently in failing to ascertain the facts on which the statement was based. (ECF No. 146-2 at 28.)

After a thorough review of the arguments presented and the record in this case, the Court finds that the evidence presented at trial supported the jury's verdict. As such, the Court finds that Plaintiff failed to demonstrate the need for a new trial based on three of the alleged defamatory statements. The Court's analysis of each statement — and the arguments presented — follows.

### a.   Expired License

Plaintiff asserts that trial evidence "clearly proved" the defamatory nature of Defendant's statement that Plaintiff operated without a license. (Mot. at 6.) First, Plaintiff asserts that this statement constitutes defamation per se. (*Id.*) And second, Plaintiff argues that, even if the jury believed Defendant's testimony that Plaintiff "could be operating without a license based on his failure to upload his renewed license to [] Defendant's system," there existed a clear negative connotation such that the statement constituted defamation. (*Id.* at 7.)

Plaintiff forfeited the ability to argue that any of the statements at issue constituted defamation per se. Following the Court's First Final Pretrial Conference in this matter, the Court issued an order stating that "[b]ecause Plaintiff failed to file a motion asking the Court to find the statement at issue defamatory per se as a matter of law, the Court finds that Plaintiff has waived the ability to assert defamation per se in this case." (ECF No. 127 at 1.) As such, the Court

rejects Plaintiff's renewed argument that the statement regarding Plaintiff's license expiration constitutes defamation per se.

The Court finds Plaintiff's attempt to relitigate the evidence presented at trial equally fruitless. As Defendant notes, the jury heard plenty of evidence such that they could reasonably conclude that statements regarding Plaintiff's license did not constitute defamation. (*See* Resp. at 8 ("For example, Plaintiff admitted that the Hetrick Companies, LLC ("HetCo") public adjuster license that was uploaded to IINK's platform in June/July 2023 had a May 1, 2023 expiration date. ECF 146-1, Admission No. 4; Admission No. 5. IINK's witnesses also testified that IINK's terms of service required Plaintiff to keep his license on file with IINK up to date. Exhibit 2, Nov. 8, 2024 Tr., 308:6-311:10 (R. Wetzel); 337:16-338:11 (T. McGrath)."). As a result, the jury's conclusion that statements about Plaintiff's license expiration did not constitute defamation was not "against the clear weight of trial evidence . . . based on evidence which is false . . . or will result in a miscarriage of justice." *Dennis,* 290 F.3d at 650. The Court therefore declines Plaintiff's request to grant a new trial based on Plaintiff's assertion that statements regarding Plaintiff's license proved certainly defamatory.

### b. Plaintiff Scams Widows and Dead People

Next, Plaintiff asserts that "[t]he greater weight of evidence showed that Defendant defamed [Plaintiff] by stating to [his] largest client that [Plaintiff] had . . . stolen the identities of dead persons and scammed widows." (Mot. at 8.) Plaintiff supports his argument by referring to Plaintiff's Exhibit 22, which is an email exchange between Defendant and Plaintiff's client that Plaintiff admitted into evidence at trial. (*Id.* at 7.) In the email, Defendant stated that "there are multiple jobs that are tied together related to widows and there…is a past history of stealing identities of dead homeowners." (*Id.* at 8.) Plaintiff asserts that Defendant had certainly been

5

referring to Plaintiff when making this statement, and thus defamed him. (*Id.*) But, as Defendant notes, the jury also heard witness testimony that this statement referred to Plaintiff's father, who, as Plaintiff stipulated, previously "pled guilty to mail fraud and conspiracy to commit money-laundering relating to the thefts of funds from a pension funds and was sentenced to prison." (Resp. at 8; ECF No. 146-1 at 11.) Plaintiff had the opportunity at trial to rebut this story. He attempted to do so through testimony from Joseph Stephens. (*See* Mot. at 7–8 (recounting Jospeh Stephens' testimony that Defendant's statement referred to Plaintiff).)

In the end, the question of who Defendant's statement referred to constitutes a hotly contested issue, and the Court declines the opportunity to relitigate whether this statement proved defamatory. Instead, the jury's conclusion does not prove against the clear weight of the evidence, based on false evidence, or a miscarriage of justice. *Dennis,* 290 F.3d at 650. Rather, the jury made a reasonable credibility determination that this Court will not disturb. Thus, the Court will not grant Plaintiff a new trial on whether Defendant's statement regarding scamming "dead persons . . . and widows" constitutes defamation. (Mot. at 8.)

### c. Plaintiff Committed Fraud

Finally, Plaintiff briefly argues that "in addition to specific statements . . . concerning fraudulent activities by [Plaintiff], Defendant also made general allegations that [Plaintiff] was committing fraud" to Plaintiff's largest client. (Mot. at 8.) Plaintiff asserts that these statements certainly proved defamatory but offers no argument to that end. (*Id.*) Even still, the Court finds that the jury heard sufficient evidence to conclude that such statements did not prove defamatory. Consequently, this argument fails.

### 2. Potential Jury Bias against Russians

Next, Plaintiff asserts that "[a] possible basis of the jury's actions were based on the inflammatory nature of current national prejudice." (*Id.* at 10.) Plaintiff reasons, without citation, that "[a]fter race, perhaps the second most present source of prejudice is nationality." (*Id.*) And because there proves "no[] known rational explanation for a large portion of our jury's findings," the explanation must be jury prejudice against Russians, and thus Plaintiff. (*Id.*) Defendant disagrees, noting that "Plaintiff fails to present or cite to any evidence that the jury was influenced by any sort of prejudice (country prejudice or otherwise) in reaching its verdict." (Resp. at 11.)

While Plaintiff cites general examples of prejudice against Russia and Russian people, Plaintiff fails to allege specific evidence of bias concerning the jury who tried this case. Further, Plaintiff's assertions prove rambling and, at times, non-sensical. The Court thoroughly explored any potential bias against Russia during voir dire and the jurors selected all indicated that they held no bias. The Court therefore rejects Plaintiff's assertions and will not grant a new trial on baseless allegations of jury prejudice.

### 3. Justin Hook Constituted a Non-Credible Witness

Finally, Plaintiff seeks a new trial, because Justin Hook constituted a "deceitful, biased witness." (*Id.* at 12). Plaintiff argues that any jury finding based on Justin Hook's testimony stands against the greater weight of evidence or based on false evidence. (*Id.*) Defendant disagrees, arguing that "Plaintiff fails to cite to any evidence that demonstrates any bias or willingness to lie under oath by Hook that would entitle Plaintiff to a new trial." (Resp. at 10.)

The Court agrees with Defendant, finding that Plaintiff's assertions constitute unfounded attempts to re-litigate this case and impeach a witness that he previously had the opportunity to

cross-examine. Plaintiff cites both the July 7, 2023 teleconference, in which Justin Hook participated, and Justin Hook's recorded deposition at length.[2] (Mot. at 13–19.) Plaintiff claims that there exist discrepancies between the teleconference and deposition, showing that Justin Hook provided false testimony. But, as Defendant notes, the parties presented recordings of both the teleconference and deposition at trial, and the Court provided the jury with a transcript of the teleconference call for their deliberations. (Resp at 11.) As such, the jury heard any alleged discrepancy between the teleconference recording and Justin Hook's testimony. Plaintiff even admits to questioning Justin Hook on a perceived difference between statements in the teleconference call and the deposition, stating that "[t]he undersigned tried to coax legitimate testimony from Hook to no avail." (Mot. at 17.) But Plaintiff's counsel's failures do not render the jury's verdict a miscarriage of justice.

Furthermore, Plaintiff acknowledges that statements in the teleconference transcript that he attributes to Justin Hook are labeled as "unknown" speaker. (*Id.* at 16.) Plaintiff therefore requests that the Court trust his personal assessment that it "was certainly Hook talking," rather than relying on evidence presented at trial. (*Id.*) The Court declines to do so.[3]

Thus, the Court finds the jury verdict neither against the clear weight of the evidence nor based on false evidence. The parties told different stories, and the jury found Defendant not liable for defamation. Plaintiff presents no evidence that suggests such verdict proved a

---

[2]    The Court granted the parties' joint request that Justin Hook's recorded deposition be presented at trial in lieu of live testimony. (ECF No. 123.)

[3]    The Court finds that Plaintiff's counsel's inclusion of screenshots of Mr. Hook from recorded deposition testimony captioned "been-caught-lying face" are entirely inappropriate in filings presented to this Court. (Mot. at 18–19.) The Court strongly advises that Plaintiff's counsel refrain from such action in the future.

8

miscarriage of justice. As a result, the Court denies Plaintiff's request for a new trial based on Justin Hook's testimony.

### B. Motion for Recission of Rule 50 Trial Verdicts

Next, Plaintiff asserts the necessity of a new trial based on three statements that Plaintiff claims that the Court wrongfully excluded from the jury's consideration. (*Id.* at 19.) At the conclusion of evidence, the Court granted Defendant's oral motion pursuant to Fed. R. Civ. P. 50(a) to strike three of Plaintiff's alleged defamatory statements after Plaintiff failed to proffer sufficient evidence as to two elements of defamation: that Defendant made the statements or that they concerned Plaintiff.[4] *See Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir. 1995) (holding that "[t]he movant is entitled to judgment as a matter of law 'if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof.'"). Plaintiff contends that this proved an error and asks that the Court reverse itself and allow for a new trial so a jury may consider whether the excluded statements constituted defamation. (*Id.*) Defendant disagrees, noting that "Plaintiff [] fails to state any basis that the Court's decision to strike three of the alleged defamatory statements pursuant to Fed. R. Civ. P. 50(a) was incorrect and should be altered or reversed." (Resp. at 12.) The Court agrees with Defendant and rejects Plaintiff's contention that it erred when it found that Plaintiff failed to proffer sufficient evidence as to three of the alleged defamatory statements. As such, the Court denies Plaintiff's Motion for Recission of Rule 50 Trial Verdicts.

Further, Plaintiff argues that the Court erred when it excluded three of Plaintiff's proposed witnesses and when it allowed Justin Hook to testify. (Mot. at 26.) The Court initially

---

[4] At the outset of trial, seven alleged defamatory statements were at issue. (ECF No. 146-2 at 27.) At the conclusion of trial, four alleged defamatory statements were sent to the jury to deliberate on. (ECF No. 153.)

made these rulings at the First Final Pretrial Conference. (ECF No. 127 at 3–4.) Plaintiff then moved the Court to reconsider (ECF No. 136), which the Court denied during the Second Final Pretrial Conference (ECF No. 142 at 1.) Plaintiff now argues that the Court's exclusion of their proposed witnesses "was an abuse of discretion." (Mot. at 27.)

As the Court noted during both Final Pretrial Conferences, Plaintiff failed to identify its witnesses during discovery. (ECF No. 127 at 4.) This violates Fed. R. Civ. P. 26, which requires that "a party . . . provide to the other parties the name . . . of each individual . . . that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). While Plaintiff asserted that the witnesses qualified for impeachment purposes only, the Court determined at the First Final Pretrial Conference that the witnesses proved substantive, thus warranting exclusion. Meanwhile, Defendant identified Justin Hook as a potential witness during discovery, thus giving Plaintiff no basis for exclusion. As a result, the Court did not abuse its discretion when it excluded Plaintiff's witnesses and declined to exclude Justin Hook. Thus, the Court again denies Plaintiff's request.

### B.   Motion for Entry of Judgement pursuant Fed. R. Civ. P. 59(a)(2)

Finally, Plaintiff moves for the entry of judgement in his favor "for the allegation of the Complaint's par. 22(b), (e), and (f)" under Fed. R. Civ. P. 59(a)(2). (ECF No. 155 at 1.) Plaintiff does not advance additional arguments for this request in the brief in support of his motion (ECF No. 156) or in his reply brief (ECF No. 158). But, as Defendant notes, Plaintiff cannot seek the relief that he requests. (Resp. at 4.) Fed. R. Civ. P. 59(a)(2) provides that "[a]fter a *nonjury trial*, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make

new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2) (emphasis added). A jury tried the instant case, thus rendering Rule 59(a)(2) inapplicable to the case at hand. As a result, the Court denies Plaintiff request to enter judgment in his favor on paragraphs 22(b), (e) and (f) of his complaint.

## CONCLUSION

For the reasons stated above, Plaintiff failed to show that that "(1) the [jury's] verdict is against the clear weight of the evidence, (2) is based on evidence which is false, or (3) will result in a miscarriage of justice . . . ." *Dennis,* 290 F.3d at 650. Thus, the Court hereby DENIES Plaintiff Motion for New Trial under Fed. R. Civ. P. 59(a), Entry of Judgement under Fed. R. Civ. P. 59(a)(2) and Recission of Certain Trial Verdicts under Fed. R. Civ. P. 50 (ECF No. 155).

Let the Clerk file this Order electronically and notify all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States District Judge

Alexandria, Virginia
Dated: January 27, 2025